Next case called for, argument is Boucher v. Rose. Counsel, whenever you're ready. My name is Russ Rose. I'm here for Kayla Boucher v. Rose. This is a case involving simultaneous, a postal simultaneous filing in Kentucky, in Illinois, regarding child custody of two parties who were not married. The case in Kentucky was filed shortly before the case in Illinois. The case in Kentucky came to a temporary hearing about, well a few days after the case in Illinois was filed. The case was heard in Kentucky in a temporary manner. The judge entered a ruling down there that parties would have shared custody going back and forth, one week with one parent and one week with another. And then there was an answer filed by the father, Mr. Rose, to the case in Illinois in, I believe it was in January of 2012. So we have the cases spoken about in late 2011. The response to the Illinois case by the father was a motion to dispense, based upon the fact that the Kentucky case had started the case. The Kentucky order actually cited in its order that the Kentucky court would take jurisdiction, but would talk to the Illinois court and would only hold jurisdiction until the court could see what happened in Illinois. And a hearing. It's a little bit ambiguous whether the court meant that the Kentucky court would have a hearing or whether the Kentucky court was waiting on Illinois to have a hearing to decide jurisdiction. After that motion to dismiss was filed, the judge in Illinois failed to contact the Kentucky judge until July of 2012, which would be many months later. From Kayla's point of view, Kayla had in her mind and in her allegations, in her affidavits, the trial had been with Kayla, living in Illinois, for many months continuously before both cases were filed. And in Kayla's view, and what I attempted to argue to the trial court, was that the jurisdiction, the proper jurisdiction of the case was Illinois. And the facts would show that if we were given an opportunity to bring those before the court. To supplement our allegations, we submitted affidavits saying that we could produce witnesses of daycare workers who had been hired on a weekly basis and that they had seen the child because they were hired to take care of the child on a weekly basis. And that it was only on infrequent occasions that the child went to Kentucky to visit the father. And that the mother, my client, did that by agreement so that the child could visit the father. The problem with that visitation arose somewhat in the fall of 2011 when the father refused to give the child back one time. The mother sought the help of the Kentucky police. The Kentucky police intervened and my client brought the child back to Illinois that time. There was another visit and according to my client, after that visit, the father filed an action in Kentucky and got the order in a very short time. At that hearing, on that order, my client appeared. My client did not have an attorney. She had tried to obtain an attorney. I tried to assist her in obtaining an attorney. That was unsuccessful in a short fashion. And then the order was entered. The argument I have to this court is that the trial court erred in not taking an active part in determining that Illinois was the proper jurisdiction of this case. If what my client says by her affidavits and her allegations are true, an injustice has been done that Illinois was the proper place, not only because the child had been here as the home state, but because it was a matter of convenience. Because the daycare workers, the doctors, everybody that dealt with that child was in Illinois. The trial court refused to have a hearing regarding jurisdiction. The trial court would only put the matter off and it wasn't until July when the trial court in Illinois talked to the trial court in Kentucky. There is very little in the record of what happened during that conversation. The judge did not have it recorded with a transcription. The judge didn't make a detailed memo of what was said. The judge did not state that she, whether she did or did not, recite to the Kentucky judge all of the affidavits that were present in Illinois that were citing that this child had been in Illinois and that this child had the daycare and doctors in Illinois and relatives in Illinois and that that perhaps would be either the home state or, if not that, the convenient state to hear the case. What about the finding of residents in Kentucky for a certain number of months prior to the Kentucky court's order, final order? Is the court asking about the order of the Kentucky court? Yes, I am. My client, of course, disputed that and said that the facts themselves don't bear that out and the witnesses to prove those facts were in Illinois. And she could prove that with the witness in Illinois by the daycare workers that she hired on a weekly basis to take care of the child at a commercial daycare who could testify that the child was there. The child was in Illinois. The child wasn't in Kentucky except for business. And that was raised in Kentucky? That I don't know. Well, isn't that part of the problem, that jurisdiction wasn't raised in the Kentucky hearing? I don't know that jurisdiction wasn't raised. I don't know that the facts were not raised. As far as what the Kentucky court did, at the December hearing in Kentucky, the court did not make it a final decision. The court basically said, hey, I'm just going to take jurisdiction in this case unless and until Illinois takes jurisdiction and a hearing can be held. And so I would argue that the Kentucky court basically put it on the Illinois court to hold a hearing and see what, if Illinois was going to take jurisdiction. From the Kentucky court's point of view, these people had already had a dispute involving the police. The Kentucky court, pursuant to the Uniform Act, is allowed to give emergency orders even if it's not a final determination that the child had a home state in Kentucky. And the Kentucky judge, it can be rationalized, was keeping the peace by saying, okay, the child can stay here one week with you until and unless the Illinois court takes jurisdiction and holds a hearing. Nothing happened in the Illinois court through July of any substance, by the way, of the court. The court never heard any – in Illinois, never heard any witnesses. And the court, as far as can be determined, did not argue to the Kentucky court that there was a possibility that an Illinois child was being decided upon by a Kentucky court improperly. And that's the argument I'm making here, that the court should have done something a little more aggressive to determine if, in fact, there is an Illinois child, home state Illinois, being taken for a visit in Kentucky and all of a sudden being decided that it's a Kentucky case. Then the Kentucky judge, after the July conversation with the circuit judge in Illinois, very shortly after that, entered an order saying that the court was going to just accept jurisdiction and make a decision on things. But the Kentucky judge did not hold another hearing to do that. The judge – the only intervening thing that happened in Kentucky between the – as far as the court is concerned in Kentucky, from the December decision of the judge, which was unless and until Illinois court takes jurisdiction, until the Illinois court in July talked to the Kentucky court, shortly after that the Kentucky court says, okay, we're taking jurisdiction and this is what it is. And I wonder what happened in that conversation between the circuit judge in Illinois and the judge in Kentucky. Did the circuit judge in Illinois say, I don't want this case? Did the circuit judge in Illinois say, I don't want to deal with this case? Did the circuit judge in Illinois say, I don't want anything about this case? We don't know whether the judge expressed anything to the Kentucky court that was an accurate description of what the situation was here in Illinois. The – there have been instances in that Supreme Court's Sophia case where a trial judge did take a more active role in talking to the other state, trying to say to the state, we have a child here that may be one of ours, so to speak, one of our home people. And we want to make sure we have a decision, be able to make a decision in Illinois courts over children that have a home in Illinois. I ask that the court remand this matter back to the circuit court and ask the judge to hold a hearing to allow this evidence to be presented and then make a conversation with the judge in Kentucky in light of what facts the judge would then know and be able to talk informed about. How can the judge have an informed conversation with the judge in Kentucky about the case if the judge does not listen to the facts that can be presented here in Illinois? And that's what I'm asking the court to do. Thank you, counsel. Counsel? May it please the court, counsel. My name is Peggy Raymond, and I represent the respondent, Kelly Tyler Rose. This matter comes before the court on the dismissal of Kayla Boucher's petition for child support and visitation order from the circuit court of Jackson County. A little bit of the background of this case. Tyler filed his action in Kentucky on December 6, 2011. Kayla filed her petition in Jackson County, Illinois on December 13, 2011. The parties then appeared in Kentucky on December 19, 2011 for a temporary hearing. Obviously, neither counsel or I were there, so we don't know exactly what went on at that time. But the order specifically states that evidence was heard. At that time, Kayla had the opportunity to be heard, say she lived in Illinois, what was going on, what she was doing regarding this situation.  At that time, the Kentucky court entered an order stating that it had jurisdiction and allocated time allocation between the parties for, with the minor child. At that time, Tyler had never even been served with the Jackson County petition. He was served after that December 2011 hearing. After she appeared at that hearing, Kayla then continued to proceed with her Jackson County action. And that's how our office then became involved. We appeared in a case management in early April 2012, informed the trial court of the jurisdiction issues with Kentucky, and the trial court, the Honorable Kimberly Dolan, instructed both counsels to file appropriate pleadings and motions with the court regarding the jurisdiction. On behalf of Tyler Rose, our office filed a motion to dismiss based upon jurisdiction issues and arguing that Kentucky should retain jurisdiction. Kayla's attorney also filed appropriate pleadings. At that point in time, under the statute with the Uniform Child Pesticide Jurisdiction and Enforcement Act, what the Illinois trial court should have been doing under the simultaneous proceedings is examining those pleadings, but staying in the action and talking to the Kentucky court, which is exactly what Judge Dolan did. She received these pleadings, she reviewed them, she attempted to start contacting the Kentucky court. And it's in the record that she made a couple of different attempts to contact the Kentucky judge before she was finally able to speak directly with the Kentucky judge. They discussed the matter, and at the end of that discussion, the Kentucky judge said, you know, I want to go back and look at this some more. I'll let you know what I'm going to do. Basically, under the simultaneous proceedings, under that statute, under the UCCJEA, it basically provides that once an Illinois court has determined that another court has simultaneous jurisdiction, they are to stay the proceedings, communicate with the court. That happened in this situation. The statute then proceeds to state, if the court of the state having jurisdiction substantially in accordance with this act does not determine that the court of this state is a more appropriate forum, the court of this state shall dismiss the proceeding. Kentucky judge then entered an order stating that it was going to retain jurisdiction. It found that from the December 19, 2011 hearing, that at that time, Kayla specifically stated that no action had been filed in Illinois, which was false. This action was filed on December 13, 2011. The Kentucky court also determined from the evidence it heard that date that the minor child had not resided in Illinois for six consecutive months to make Illinois the home state. And under those bases, the Kentucky judge decided that it was going to retain jurisdiction. And at that point, the only thing Illinois judge Kimberly Dahlin could do at that point was to dismiss the proceedings here in Illinois, which is what she did. The other issue that Kayla Voucher raised was whether the trial, Illinois trial court, properly communicated with the Kentucky judge. There's nothing in the UCCJEA or in case law that I could find that dictated how much or how often the judges should communicate. The case that was cited by Kayla and her brief and race of EGL dealt with a case where Illinois was trying to get in contact with an Indiana judge, sent numerous correspondence, tried to contact the Indiana judge several times by phone. Any Indiana judge did not respond at all. And in that case, the Supreme Court said the decision of this magnitude at least deserves a phone call. In this case, Judge Kimberly Dahlin tried contacting the Indiana judge on at least two occasions before she was able to speak with the Kentucky judge. And again, I don't see anything under the statutes that requires more than that. Their other issue was whether or not there should have been an evidentiary hearing held. What Kayla argued in her brief was basically there should have been the hearing after the Jackson County case management conference in April, and then they should have talked to the judge. And clearly that is not what is set forth under the statute. They also raised in their brief whether they properly dismissed the petition. They didn't provide any arguments or authority, and so we would ask that that issue be waived, Your Honor. And respectfully, we're asking that this court affirm the trial court's decision in dismissing Ms. Foucher's petition. And we believe that Kentucky was the appropriate forum for this matter. To your knowledge, was any aspect of the Kentucky order appealed? Not to my knowledge, Your Honor, no. Thank you, counsel. Thank you. Counsel? I'll ask you the same question. I know of no appeal from the Kentucky judge. Okay. The only other thing I want to point out is that one of the affidavits provided by my client to the circuit court in Illinois was that in the time after the December temporary hearing in Kentucky, until the ruling in Kentucky that they were going to take the jurisdiction, that the father of the child had moved with the child to reside in Indiana, and that the child at the time of the Kentucky ruling was actually living in Indiana with his father because the parties were going back and forth, visiting. And that's what the affidavit said, and they were going back and forth from Indiana. And Kentucky wasn't even part of it anymore as far as the residence. It was just a place where this court had made this ruling. Thank you, Judge. Thank you, counsel. Okay, we appreciate the briefs and arguments. Counsel will take the case under advisement. We will resume. Pardon? We will resume court at 1.30.